```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE
```

Denyse Merullo

    v.                                      Civil No. 11-cv-116-SM

Ricky Don Greer


### REPORT AND RECOMMENDATION

Denyse Merullo has sued Ricky Don Greer in six counts. She seeks: (1) declaratory judgments on two issues (Counts I and II); various forms of injunctive relief; and (3) damages for defamation (Count IV) and violation of the New Hampshire Consumer Protection Act ("CPA") (Count V). Merullo's claims arise out of a dispute over her right to use certain computer programs that facilitate internet traffic exchanges. When Greer failed to appear, default was entered against him.

Before me for a report and recommendation is Merullo's motion for entry of default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Also before me for determination is the amount of damages to which Merullo is entitled. See Fed. R. Civ. P. 55(b)(2)(B). For the reasons that follow, I recommend that Merullo's motion for entry of default judgment be granted, that Merullo be awarded damages in

the amount of $1,000, and that she be awarded at least $350 in costs.

**Motion for Entry of Default Judgment**

A defendant who has "defaulted for failure to plead or otherwise defend [is] 'taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which the damages will be calculated.'" Joe Hand Promotions, Inc. v. Patton, No. 10-40242-FDS, 2011 WL 6002475, at *1 n.1 (D. Mass. Nov. 29, 2011) (quoting Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002)). However, "a district court may, after entry of default, still conclude that a complaint fails to state a claim." Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 537 n.5 (1st Cir. 2011) (citing Ramos-Falcón v. Autoridad de Energía Eléctrica, 301 F.3d 1, 2 (1st Cir. 2002)).

Because "judgment by default [may be granted] only for relief that may lawfully be granted on the well-pleaded facts alleged by the claimant," 10 James Wm. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2010), the court has examined each of the six claims asserted in Merullo's amended complaint. Based upon the facts alleged, which are taken to be true, the

court concludes that each count in Merullo's amended complaint adequately states a claim against Greer.  Accordingly, I recommend that Merullo's motion for entry of default judgment be granted.  Granting default judgment to Merullo would, necessarily, entail granting her the declaratory relief she seeks in Counts I and II of her amended complaint.

### Equitable Relief

In addition to declaratory relief, Merullo seeks various forms of equitable relief.  In light of the recommendation that Merullo be granted default judgment on all of her claims, I further recommend that she be granted the equitable relief outlined in her motion, to wit, an order:

> Enjoining and restraining Defendant and his agents, servants, representatives, successors, assigns and all others in active concert or participation with Defendant, permanently from: (a) using false designations of origin to describe its own services; (b) using false and/or misleading descriptions of fact that are likely to cause confusion, mistake, and/or deception as to the affiliation, association, or connection between Plaintiff and Defendant; (c) misrepresenting the nature, characteristics, and qualities of Plaintiff's services and commercial activities in commercial advertising; and (d) unfairly competing with Plaintiff in any manner whatsoever;

> Enjoining and restraining Defendant and his agents, servants, representatives, successors, assigns and all others in active concert or participation with Defendant, permanently from disparaging the services

and/or business of Plaintiff by false or misleading representations of fact;

    Enjoining and restraining Defendant and his agents, servants, representatives, successors, assigns and all others in active concert or participation with Defendant, permanently from publishing defamatory statements about Plaintiff . . . ; [and]

    Requiring Defendant to deliver up for destruction all false and defamatory statements published by Defendant of and concerning Plaintiff.

Pl.'s Mot. for Entry of Default J. (doc. no. 17), at 3-4.

### Damages

Having recommended awards of declaratory and equitable relief, I now turn to Merullo's request for damages. She seeks: (1) $500 in compensatory damages for lost business, trebled pursuant to N.H. Rev. Stat. Ann. ("RSA") § 358-A:10, I; (2) $1,200 in compensatory damages for the cost of restoring her website to operability, trebled pursuant to RSA 358-A:10, I; and (3) $50,000 in enhanced compensatory damages for reputational harm caused by Greer's defamation.

Where a default judgment is entered, the plaintiff is obligated to prove damages against the defendant. See Fed. R. Civ. P. 55(b)(2); Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 339 n.3 (1st Cir. 2008); KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003) ("While a default judgment

constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is . . . susceptible of mathematical computation." (citation omitted)). In support of her motion for entry of default judgment, Merullo submitted an affidavit from her counsel attesting to the amount of her lost business revenue and the cost of restoring her website.  On February 7, I conducted a hearing on damages at which Merullo presented no additional evidence.

Merullo has prevailed on all four of her legal claims.  She seeks damages, however, under only two of them, her defamation claim and her CPA claim.[1]  I discuss each theory of recovery in turn.

### A. Count IV: Defamation

Greer is liable for defaming Merullo by publishing false statements that: (1) she was "illegally selling" his computer program; (2) her website was "using an illegal copy" of his software; (3) her computer program was "illegally PIRATED Software"; (4) she was "DISHONEST THIEFS!" [sic]; and (5) she "has been selling and renting an illegal hacked copy" of his software.  Greer published those statements in e-mails to

---

[1] Merullo also asserted a claim under the Lanham Act (Count III), and a common-law claim for tortious interference with contractual relations (Count VI).

numerous individuals, on his website, and on Merullo's website, which he hacked.  The only question before the court is whether Merullo has proven her entitlement to the $50,000 in enhanced compensatory damages she seeks.  She has not.

In her motion for entry of default judgment, Merullo relies on the New Hampshire Supreme Court's decision in Chagnon v. Union-Leader Corp., 103 N.H. 426 (1961).  According to Merullo, the Supreme Court's affirmance of a jury award of $99,000 for defamation in Chagnon demonstrates her entitlement to $50,000 in this case.  Chagnon, however, had something this case lacks: actual evidence of damages.  When the jury in Chagnon made its award, it had before it evidence concerning the number of people who were exposed to the defendant's defamatory statements, see id. at 444, and the degree to which the plaintiff's business revenues declined after the publication of those statements, see id. at 444-45.  Here, Merullo has presented no evidence to show the extent to which her reputation was damaged by Greer's defamation.  For that reason, the court cannot award damages on Merullo's defamation claim.  See Torres-Rivera, 524 F.3d at 339 n.3; KPS, 318 F.3d at 19.

The court has no difficulty concluding that the facts Merullo alleged in her complaint are adequate to support a

determination that Greer is liable for libel per se.  See Lassonde v. Stanton, 157 N.H. 582, 592-93 (2008) (defining libel per se as defamation "charg[ing] the plaintiff . . . with activities which would tend to injure him in his trade or business").  Moreover, a plaintiff who prevails on a claim of libel per se "can recover as general damages all damages which would normally result from such defamation, such as harm to his reputation."  Id. at 593 (citing Chagnon, 103 N.H. at 441).  And, such a plaintiff "need not prove these damages specifically."  Id. (citing Restatement (Second) of Torts § 573 (1977) ("One who publishes a slander that ascribes to another conduct . . . that would adversely affect his fitness for the proper conduct of his lawful business . . . is subject to liability without proof of special harm.")).

   While New Hampshire's common law of defamation relieves Merullo of the burden of proving her damages specifically, she still must prove her damages.  See Torres-Rivera, 524 F.3d at 339 n.3; KPS, 318 F.3d at 19.  Chagnon and Lassonde do not free Merullo from having to prove damages; they simply allow her to do so generally rather than specifically.  See Chagnon, 103 N.H. at 441; Lassonde, 157 N.H. at 593.  Without any evidence of the degree to which Merullo's reputation has been harmed by Greer's

7

defamatory statements, the court has no basis for determining a reasonable amount of compensation, and "[t]he law is clear that damages cannot be awarded on the speculation, passion, or guess of the [factfinder]," Laramie v. Stone, 160 N.H. 419, 430 (2010) (quoting 2 J. Stein, Stein on Personal Injury Damages § 6:4, at 6-14) (3d ed. Rev. 1997).  Lassonde and Chagnon offer good examples of how general damages may be proven in cases of libel per se.

In Lassonde, the defendants had contracted with the plaintiff for the construction of a home, and were dissatisfied with the plaintiff's work.  See 157 N.H. at 586.  After a bench trial, the defendants were held liable for defamation per se, and the court awarded the plaintiff $10,000 in damages.  See id. at 587.  In affirming the trial court's award, and rejecting the plaintiff's claim that he should have been awarded $30,000, the New Hampshire Supreme Court quoted the trial court order it was affirming:

> In awarding general damages the Court is mindful of the geographic location in which Lassonde works. Pittsburg, New Hampshire is a small business market and the defendants [ ] [made a] purposeful and willful attempt to interfere with Lassonde's business opportunities.  Accordingly, the Court finds and rules that the plaintiff is entitled to damages for defamation per se and award[s] him damages in the amount of $10,000.

Id. at 593.  The damage award quoted above was based on the following facts, established at trial:

> After their mold problem surfaced, and the Stantons' relationship with Lassonde began to deteriorate, the Stantons proclaimed their intense dissatisfaction with Lassonde's work to a number of people.  They complained about Lassonde's supposed incompetence to various laypeople, subcontractors who frequently worked with Lassonde, at least two potential Mountain View Construction customers, and those present at a meeting of the Pittsburg Board of Selectmen, who were informed by the Stantons that Lassonde had built a "sickly" house.  The Stantons even reported to a number of people that their house was so defective it had been condemned, and needed to be torn down.

Id. at 586.  So, by the time it awarded general damages, the trial court in Lassonde had heard substantial evidence from which it could make a reasonable estimate of the harm the defendants had inflicted on the plaintiff's reputation, which was the basis for the compensation the court ordered.  Similarly, in Chagnon, the jury that awarded the plaintiff $99,000 in general damages had before it substantial evidence of both: (1) the context in which the defamatory statements were made (i.e., five front-page stories in a newspaper with a readership of between 100,000 and 130,000, see 103 N.H. at 444); and (2) the decline in the plaintiff's sales after those statements were published (i.e., tens of thousands of dollars, see id. at 445).

9

Here, by contrast, Merullo has presented no evidence from which the court could measure the harm Greer has inflicted on her reputation, which is what defamation damages are intended to remedy. She has produced no evidence concerning the size or nature of the audience for Greer's defamatory statements. She has produced no evidence from which it could reasonably be inferred that her business has suffered as a result of Greer's defamatory statements. Because she has produced no evidence, Merullo has, necessarily, failed to prove her damages. Accordingly, the court has no choice but to award her nothing on her defamation claim.

B. Count V: New Hampshire Consumer Protection Act

Greer is liable for violating the CPA because he "disparaged the services and business of [Merullo] by [making] false and/or misleading representations of fact," Am. Compl. (doc. no. 11) ¶ 46, in violation of RSA 358-A:2, VIII. The question before the court is whether that CPA violation entitles Merullo to the actual damages she seeks, i.e., $500 for lost business and $1,200 for the cost of restoring her website. There are several problems with Merullo's claim for actual damages.

First and foremost, there is nothing in Merullo's amended complaint to even suggest that she lost business due to Greer's disparagement. Rather, she alleges: "As a result of her server being hacked and her databases deleted, Ms. Merullo lost at least one customer, two prospective customers, and potentially other prospective customers who were unable to contact her at all." Am. Compl. (doc. no. 11) ¶ 20. Thus, according to Merullo's own complaint, she lost customers and prospective customers not as a result of Merullo's disparagement of her business but, rather, as a result of his hacking into her server. Similarly, she does not allege that her website was damaged by Greer's disparagement; she alleges that he damaged her website by hacking into her server. See id. Because the actual damages Merullo seeks did not result from Greer's violation of the CPA, but from acts that are not unlawful under that particular statute, her lost business and website-restoration costs are not compensable under the CPA.

Moreover, even if those losses were compensable under the CPA, Merullo has not adequately proven them. The only evidence she has produced is an affidavit from her counsel attesting to the amount of her business losses and the cost of restoring her website. Attorney Krakau states that he has personal knowledge

of the matters set forth in his affidavit and avers that "if called upon as a witness, [he] could and would testify competently thereto." Pl.'s Mot. for Entry of Default J., Krakau Aff. (doc. no. 17-1) ¶ 2. Attorney Krakau does not, however, say how or why he would be competent to offer testimony on Merullo's damages. That is, he does not indicate the basis of his purported first-hand knowledge. Nor does he support his affidavit with documents, the authenticity of which he verifies, that demonstrate Merullo's losses. A authenticated bill from Merullo's computer programmer, for example, would have been helpful. In sum, the court would be reluctant to accept Attorney Krakau's affidavit as evidence of Merullo's actual damages.

While Merullo is not entitled to actual damages, Greer is, nonetheless, liable for a CPA violation, based on his false and disparaging statements about Merullo's business. For that violation, Merullo is entitled to statutory damages of $1,000. See RSA 358-A:10, I ("If the court finds for the plaintiff [on a CPA claim], recovery shall be in the amount of actual damages or $1,000, whichever is greater.").

Merullo also seeks treble damages, which may be awarded under the CPA "[i]f the court finds that the use of the method

of competition or the act or practice was a willful or knowing violation of this chapter," RSA 358-A:10, I.  Here, the court cannot find that Greer's CPA violation was willful or knowing.  In her amended complaint, Merullo included treble damages in her prayers for relief, but did not mention willful or knowing conduct in her CPA claim, and did not specifically identify evidence to support a finding that Greer violated the CPA willfully or knowingly.  Even if Merullo's amended complaint did more clearly establish the factual basis for a willful or knowing CPA violation, Merullo has produced no evidence of any kind from which the court could make the requisite finding.  That is fatal to her request for treble damages.  Cf. KPS, 318 F.3d at 22-23 (affirming award of double damages, under Massachusetts CPA, where magistrate judge conducted evidentiary hearing on question of whether defendant's conduct was willful or knowing).

## Costs

As the prevailing plaintiff on a CPA claim, Merullo is entitled to the costs of her suit.  See RSA 358-A:10, I.  She seeks to recover her $350 filing fee plus $350 in costs associated with serving Greer with the summons and complaint.

Plainly, Merullo is entitled to her filing fee.  However, given that Merullo initially served Richard Greer rather than Ricky Don Greer, the court cannot recommend an award of fees related to service of process without additional proof that the service fees Merullo seeks pertain only to service on the correct defendant.  Accordingly, I recommend an award of $350 in costs, and further recommend that Merullo be given the opportunity to submit evidence demonstrating the costs she incurred in serving Ricky Don Greer.

## Conclusion

For the reasons explained above, I recommend that Merullo's motion for default judgment, document no. 17, be granted.  I further recommend that Merullo be awarded damages in the amount of $1,000.  Finally, I recommend that Merullo be awarded costs in the amount of $350, plus the cost of serving Rocky Don Greer, subject to her production of satisfactory proof thereof.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57

(1st Cir. 2011), cert. denied, 80 U.S.L.W. 3397 (U.S. 2012) (No. 11-7382), (citing United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008)); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

February 10, 2012

cc: Donald C. Crandlemire, Esq.
Gregory M. Krakau, Esq.